**In re Michael Angelo
BISIGNANI, Debtor.**

**Floyd PUCELLO, Plaintiff,**

v.

**Michael Angelo BISIGNANI, Defendant.**

**Bankruptcy No. 87–01555.
Adv. No. 88–0004.**

United States Bankruptcy Court,
N.D. New York.

Oct. 6, 1988.

Hinman, Howard & Kattell (Paul T. Sheppard, of counsel), Binghampton, N.Y., for defendant Michael Angelo Bisignani.

Scott, Sardano & Pomeranz (Roger Scott, of counsel), Syracuse, N.Y., for plaintiff Floyd Pucello.

## MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Bankruptcy Judge.

This matter comes before the Court on the oral motion of defendant Michael Angelo Bisignani ("Debtor") for attorney's fees and sanctions at the close of the trial of an adversary proceeding commenced on January 14, 1988 by Floyd Pucello ("Pucello") pursuant to § 523(a)(6) of the Bankruptcy Code, 11 U.S.C.A. §§ 101–1330 (West 1979 & Supp.1988) ("Code").[1]  Said trial was conducted in Utica, New York on June 15, 1988 and involved an unsecured sum of $3,176.04.  At the close of the plaintiff's case, the Court granted the Debtor's motion to dismiss the adversary proceeding due to the plaintiff's failure to prove the cause of action, based upon Rule 41(b) of the Federal Rules of Civil Procedure ("Fed. R.Civ.P."), as incorporated by Bankruptcy Rule ("Bankr.R.") 7041.

After the Debtor moved for sanctions and attorney's fees, the Court directed the Debtor's attorney, Roger Scott, Esq. ("Scott"), to file an affidavit as to the requested attorney's fees and provide legal support for his position within two weeks and serve a copy on Pucello's counsel, Paul T. Sheppard, Esq. ("Sheppard").  The Court gave Sheppard a week after receiving the papers to submit a responding memorandum of law.

On June 30, 1988, the Debtor filed an application for attorney's fees in the amount of $2,871.00 and costs, which was comprised of Scott's notarized affirmation and copies of his retainer agreement and time sheet for legal services.  *See Application For Costs And Attorney's Fees* (June 28, 1988).  The notice of service indicated that Sheppard was served on June 28, 1988. Scott alleged that "any attorney authorized to practice before this court, and competent in his field, knew, or should have known, that it is impossible to prove a nondischargeability claim against a debtor with-

---

**1.** Debtor filed a petition under Chapter 7 of the Code on November 4, 1987 and in an Order dated August 5, 1988 was granted a discharge.

out witnesses and without certified documents, or without having obtained consent by stipulation or by proper discovery proceedings as to—the authentication of documents of the accuracy of facts." *Id.* at para. 6.

Scott maintains that Sheppard acted in bad faith by instituting the suit since he failed to produce the plaintiff or any witnesses at trial, conducted no discovery, relied on uncertified and inadmissible documents and then insisted upon proceeding to a conclusion of the plaintiff's case where it was dismissed for the inability to establish a prima facie case. Citing to three cases and Fed.R.Civ.P. 11, Scott referred to the Court's equitable authority as the basis upon which to award expenses to a party whose adversary acts in bad faith in commencing or conducting litigation. *Id.* at para. 4.

On July 11, 1988, Pucello filed a cross-motion by mail, without notice or return date, to strike the Debtor's application and for his own costs and attorney's fees incurred in opposition. In his accompanying memorandum of law, Pucello maintained, relevant to the instant motion, that 1) the defense had not adequately complied with the Court's request for a memorandum of law setting forth arguments in support of its application for costs and attorney's fees, 2) plaintiff's response to defendant's application was timely, 3) defendant's application papers did not support its assertion that the imposition of attorney's fees and costs would be appropriate in the instant proceeding and 4) defendant's attorney's fees for legal services were excessive and unconscionable. Should he not prevail on these four grounds, Pucello then argued that there was no statutory basis for the attorney fee application, he neither instituted nor conducted the instant litigation in bad faith or for any improper purpose given his colorable claim for assault against the Debtor and that the defendant should not have been permitted to benefit by his own perjury.

## JURISDICTIONAL STATEMENT

The Court has jurisdiction of this core proceeding arising in the Debtor's case under Title 11 pursuant to 28 U.S.C.A. §§ 1334(b) and 157(a), (b)(1) and (b)(2)(A), (I), and (O) (West Supp.1988). Bankr.R 9014 and 7052 provide the applicable procedures for the within findings of facts and conclusions of law.

## DISCUSSION AND CONCLUSIONS OF LAW

■ The general rule in American courts disallows attorney's fees to a victorious party absent statutory or contractual authorization. *See Hall v. Cole,* 412 U.S. 1, 4–5, 93 S.Ct. 1943, 1945–46, 36 L.Ed.2d 702 (1973); *see also Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 247–257, 95 S.Ct. 1612, 1616–21, 44 L.Ed.2d 141 (1975); *Browning Debenture Holders' Committee v. DASA Corp.,* 560 F.2d 1078, 1087–1088 (2d Cir.1977) (citations omitted). This rule is subject to two exceptions: 1) as a punitive measure triggered by the bad faith of an unsuccessful litigant or 2) if the plaintiff's considerable litigation confers substantial benefit on members of an ascertainable class and the award would spread the costs proportionately. *See Hall v. Cole, supra,* 412 U.S. at 5, 93 S.Ct. at 1946. "An action is brought in bad faith when the claim is entirely without color and has been asserted wantonly, for purposes of harassment or delay, or for other improper reasons." *Browning Debenture Holders' Committee v. DASA Corp., supra,* 560 F.2d at 1088. Thus, the inherent power of a federal court to assess attorney's fees against counsel can only be activated in narrowly defined circumstances. *See Roadway Express, Inc. v. Piper,* 447 U.S. 752, 765–766, 100 S.Ct. 2455, 2463–64, 65 L.Ed.2d 488 (1980).

It is clear beyond peradventure that there is no contractual authority for awarding the Debtor attorney's fees or costs. Nor is the "common benefit" exception of aid to his application. Therefore, he must succeed on either the bad faith exception to the American rule or upon the existence of a statute sanctioning such an award. The Debtor's application appears to loosely embrace both grounds.

Because the federal rules advocate the liberal construction of pleadings in the belief that truth rather than sport should prevail, *see* Fed.R.Civ.P. 8(f); *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957) and this is a court of equity, the Court will treat the Debtor's application as a memorandum of law setting forth potentially viable claims, albeit its brief and informal nature.[2] Similarly, the Court construes the reference to "Rule 11, Rules of Civil Procedure" as signifying Bankr.R. 9011. While Fed.R.Civ.P. 11 is technically not included in the rules governing adversary proceedings, *see* Bankr.R. 7001–7087, the Court finds it applicable under the adaptation found in Bankr.R. 9011.

Although Pucello questioned the timeliness of the Debtor's application, the Court chooses not to penalize the Debtor for filing his application one day late. The Court also observes that Pucello's responsive memorandum was timely since the act of mailing his papers increased the period from one week to ten days, computed from the date of the June 28, 1988 service, excluding intermediate Saturdays, Sundays and legal holidays. *See* Bankr.R. 7004, 9006(a).[3] Pucello filed on July 11, 1988, the ninth day.

The Court also notes that the Debtor's "bare-bones" application mispeaks on two grounds. First, he alleges that "the plaintiff failed to appear for trial." *Application For Costs And Attorneys' Fees, supra,* at para. 5. While it is true that Pucello was not physically present at the trial, Bankr.R. 9010(a) authorizes his attorney to appear and act on his behalf, which Sheppard did. Second, Scott seems to confuse the admissibility of his adversary's documentative proof with its certifiable form. Without re-hashing the Court's evidentiary ruling on this matter with regard to authentication and foundation under the Federal Rules of Evidence, suffice to say that the documents at issue were certified.

The Court now turns to the substantive elements raised by the instant motion: to wit, has the Debtor an entitlement to attorney's fees and costs in this dischargeability action based upon statute or his adversary's bad faith or a combination of the two?

At the start, the Court points out that an affirmative answer must be reached to the question posed above before an inquiry can be made as to whether the legal services Scott has itemized in his attached timesheet are "excessive and unconscionable." In any event, the standards of Code § 329(b) are inapplicable to the instant motion because any recovery will not be satisfied from property of the Debtor's Chapter 7 estate. For this same reason, it is of no moment that the Debtor signed the retainer agreement with Scott some three months subsequent to his filing.

The Court can find no statutory authority under the Code or Title 28 to justify granting the Debtor's application. At trial, a colloquy was conducted around Code § 523(d) and the Debtor's papers raise Bankr.R. 9011, *see supra.* In addition, the Court notes that the Debtor's loosely worded affirmation contains unsupported allegations implying the applicability of Code § 105(a), Bankr.R. 7037 and 28 U.S.C.A. § 1927 (West Supp.1988).

Code § 523(d), in explicitly restricting reasonable attorney's fees and costs to those actions under subsection (a)(2) of Code § 523 "not substantially justified",

**2.** This is in conformity with the Court's general practice. In addition, Scott's affirmation complied with the Court's liberal instructions to provide legal support for his client's position.

**3.** The Clerk of the Bankruptcy Court contacted Sheppard about the defects in his cross-motion on July 11, 1988, the same day it was filed. Approximately three weeks later, in a second telephone call from the Clerk, Sheppard advised the Clerk to hold said cross-motion until the Court handed down its decision on the Debtor's application. To date, the Clerk has not received the letter promised by Sheppard setting forth his intention to postpone the filing of the cross-motion. Accordingly, the Court will deal solely with the Debtor's motion for attorney's fees and costs in this Memorandum–Decision and only consider those parts of Pucello's memorandum of law thereby pertinent.

forecloses any relief for Scott. *See, e.g., Wanger v. Primack (In re Primack),* 81 B.R. 711, 714 (Bankr.S.D.Fla.1987); *Blackman v. Gaebler (In re Gaebler),* 83 B.R. 264, 270 (Bankr.E.D.Pa.1988). This limitation gives rise to a negative inference that the Code simply will not support an award of costs and fees in dischargeability actions brought under any other subsection of Code § 523(a), including subsection (6). *See In re Myers,* 61 B.R. 891, 895–896 (Bankr.N.D.Ga.1986); *cf. Hall v. Cole, supra,* 412 U.S. at 10–11, 93 S.Ct. at 1948–49.

■■■ Code § 105(a) and the Court's general equity powers are unavailing to the Debtor since they "can only be exercised within the confines of the Bankruptcy Code", consistent with its statutory language and policy. *See Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 108 S.Ct. 963, 968–969, 99 L.Ed.2d 169 (1988); *Johnson v. First Natl. Bank of Montevideo, Minn.,* 719 F.2d 270, 273 (8th Cir.1983); *Krueger v. Push & Pull Enterprises, Inc. (In re Push & Pull Enterprises, Inc.),* 84 B.R. 546, 551 (Bankr.N.D.Ind.1988). Nor is this a situation of compelling circumstances warranting the Court's invocation of its equity powers. *See In re Farmer,* 81 B.R. 857, 862 (Bankr.E.D.Pa.1988).

■■■ The Court also does not find Bankr.R. 9011, 7037 and 28 U.S.C.A. § 1927 to be of service to the Debtor because it concludes that the plaintiff had a colorable claim which was pursued by his advocate Sheppard with no improper purpose, delay or harassment. *See In re Lake Minnewaska Mountain Houses, Inc.,* 50 B.R. 374, 378 (Bankr.S.D.N.Y.1985). Moreover, Bankr.R. 9011 is not a vehicle for disciplining the practitioner who miscalculates where, as here, the attorney formed a reasonable belief that the pleading was well-grounded in fact and warranted by existing law. *See Eastway Const. Corp. v. City of New York,* 762 F.2d 243, 253–254 (2d Cir.1985). Pucello's failure to establish his case, standing alone, cannot authorize attorney's fees or costs to the Debtor. *See, e.g., Glaser v. Glaser (In re Glaser),* 49 B.R. 1015, 1020–1021 (Bankr.S.D.N.Y.

1985); *Tanner's Transfer & Storage Of Virginia, Inc. v. Florance (In re Tanner's Transfer & Storage of Virginia),* 39 B.R. 835, 838–839 (Bankr.E.D.Va.1984).

Thus, based on the foregoing and the record before it, the Court concludes that this is not an appropriate situation to trigger the bad faith exception to the American rule. *See Hall v. Cole, supra,* 412 U.S. at 1, 93 S.Ct. at 1943.

Accordingly, Scott's motion for attorney's fees and costs is denied.

IT IS HEREBY ORDERED.